# EX PARTE FERMIN MORALES.

San Juan, Naturalization.

### PORTO RICO NATURALIZATION.

Naturalization—Duties of Clerk.
> 1. A declaration of intention must be filed in Porto Rico with the clerk under his responsibility for his acts. The judge does not direct the clerk in such matters.

Same—Renunciation of American Citizenship.
> 2. Under § 3 of the Naturalization Law Porto Ricans who have renounced American citizenship may apply for citizenship without renouncing any foreign sovereign.

Opinion filed May 7, 1918.

*Mr. H. R. Francis* for petitioner.

*Mr. Miles M. Martin,* District Attorney, for the Government.

HAMILTON, Judge, delivered the following opinion:

In the matter presented to the court it seems that the petitioner applied to the clerk of this court for leave to file his declaration of intention to become a citizen of the United States, and that the clerk refused to receive the paper. The petitioner now asks the court to instruct the clerk to file the paper.

1. It is quite clear that the court has no right or duty in the premises. The Naturalization Law provides that declarations

Ex Parte Morales.

of intention shall be filed in Porto Rico with the clerk of the United States district court. The judge has nothing to do with the matter, and the naturalization questions do not come before him until two years after the original declaration, and then only upon application for final papers, accompanied by proof required by law. The clerk takes an oath of office and makes bond to discharge the duties of his office according to law. The court has no right and no wish to direct him how he must discharge these duties except in those cases, such as matters of costs, where an appeal or other form of review is provided from the action of the clerk. This is not such a case. It might be that mandamus might lie to compel him to file a paper in a proper case, but this petition is not drawn in that aspect.

2. Nevertheless the clerk joins in the wish to have the point settled, and therefore the court has heard the application. The facts developed are that petitioner is a Porto Rican by birth and residence, and would have become an American citizen under § 5 of the Jones Act of March 2, 1917, but for the fact that he renounced citizenship in the form allowed by that section. The section contemplates that such renunciation must be in six months, and the petitioner so acted within six months, and the question now comes up, What was the effect of that renunciation? Section 41 of the same act in conferring naturalization jurisdiction upon this court, provides that it covers aliens and Porto Ricans. 39 Stat. at L. 965, chap. 145, Comp. Stat. —, § 3803qq. What is the proper construction of these two sections in regard to each other?

The jurisdiction here is more extensive than that of other district courts. They are limited to aliens, while this court has power over aliens and also over Porto Ricans. Porto Ricans

Ex Parte Morales.

are not aliens. Gonzalez v. Williams, 192 U. S. 1, 48 L. ed. 317, 24 Sup. Ct. Rep. 177. According to the usual rule of construction, some field of operation must be found for the word "Porto Ricans" in § 41. If all who were Porto Ricans prior to March 2, 1917, had done nothing, had tacitly accepted American citizenship, there would have been no one left upon whom the later § 41 could operate, unless it be held applicable to Porto Ricans by birth, who at the time were residents of continental United States and not of the island of Porto Rico. This is a possible construction, but would have a very limited effect. On the other hand, it was possible that there might be many thousand Porto Ricans who, under § 5, would disclaim citizenship, and on whom the law might desire to confer a locus pœnitentiæ. If no such provision were made, the result would be that these dissentient Porto Ricans would be in a citizenship class all to themselves, and practically without a country, for the Jones Act contemplates that American citizens control the political affairs of the island. It is a question, therefore, whether the word Porto Ricans was intended to be limited to those at the time nonresidents, or can embrace the 288 people (and might have been 288,000) who actually renounced American citizenship within six months.

Light is thrown upon the matter also by § 30 of the Naturalization Law of 1906. That provides that certain applicants who are not aliens may become citizens of the United States without renouncing a foreign sovereign. Under this it is said that a number of Porto Ricans secured citizenship. This might remove the practical difficulty connected with the oath required at the final hearing.

There is a further consideration which need not be decided

Ex Parte Morales.

at present. It is one thing to give the court jurisdiction to proceed, and another thing to provide the subjects upon which the court is to act. The one relates to adjective law and the other to substantive law. It is perhaps not altogether clear whether Congress intended to pass some subsequent law declaring the admissibility of dissentient Porto Ricans to American citizenship.

It does not seem that it is proper to determine the point at this time, for it is at present only a moot point. The court, having no right to instruct the clerk, cannot with propriety decide it. The time for its decision will be two years from now, when the petitioner applies for what are commonly called his final papers. A court will not decide a question before the question comes before it. But at least there is the merit in the application that it brings up what may be an important question, and it would be wise if the clerk could see his way clear to file the petition, rather than wait for a formal mandamus. The clerk, however, will pursue such course as he thinks right.